UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| GLENDA S. AUMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 2:14-cv-300-WTL-WGH |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Glenda S. Auman requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Auman's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.   APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into

her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## II. BACKGROUND

Auman protectively filed for DIB on March 6, 2012, alleging that she became disabled on August 15, 2011, primarily due to depression, back pain, obesity, general anxiety disorder, and hypertension. Auman was born on June 30, 1971, and she was forty years old on the alleged disability onset date. Auman has a GED and has prior work experience as a school cook.

Auman's application was denied initially on April 16, 2012, and upon reconsideration on June 4, 2012. Thereafter, Auman requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A video hearing, during which Auman was represented by counsel, was held by ALJ Carla Suffi on May 29, 2013. At the hearing, Auman amended her alleged onset date of disability to March 9, 2012. The ALJ issued her decision denying Auman's claim on June 18, 2013; the Appeals Council denied Auman's request for review on June 23, 2014. Auman then filed this timely appeal.

## III. THE ALJ'S DECISION

The ALJ determined that Auman met the insured status requirements of the Social Security Act through December 31, 2016. The ALJ determined at step one that Auman had not engaged in substantial gainful activity since March 9, 2012, the amended alleged onset date. At steps two and three, the ALJ concluded that Auman had the severe impairments of "obesity; hypertension; right foot Tailor's bunion and bursitis with history of multiple bunionectomies to her bilateral feet; mild degenerative disc disease of the thoracic and lumbar spine; depression; general anxiety disorder with social anxiety and panic," Record at 15, and that the impairments more than minimally limit Auman's ability to perform the full range of basic work activities and

therefore were severe within the meaning of the Regulations. The ALJ found that Auman did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). At step four, the ALJ determined that Auman had the RFC to perform sedentary work, except:

> the claimant is able to occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; she is never able to climb ladders, ropes or scaffolds; she can never work around hazards such as unprotected heights and dangerous moving machinery; she can never work in temperature extremes; she can perform simple and detailed but not complex work tasks; she can make simple and detailed but not complex work related decisions; she can never work with the general public; she can have occasional contact with coworkers and supervisors, but her work should be performed primarily alone with no work on joints [sic] tasks with other co-workers.

R. at 19. Given this RFC, the ALJ determined that Auman could not perform any of her past relevant work. At step five, the ALJ determined that Auman could perform the requirements of a few representative occupations, such as document preparer, circuit board assembler, and cutter/paster. Accordingly, the ALJ concluded that Auman was not disabled as defined by the Act.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Auman's brief (Dkt. No. 18) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

In her brief in support of her complaint, Auman advances several objections to the ALJ's decision; each is addressed below.

### A.  The ALJ's Step Three Determination

Auman argues that the ALJ committed error when concluded that Auman's impairment did not meet or equal the listing for Affective Disorder 12.04. Paragraph B of 12.04 requires that the claimant's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. The ALJ, in considering the paragraph B criteria, found that Auman did not satisfy these requirements. Specifically, the ALJ found that Auman had mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regarding to concentration, persistence, or pace; and no episodes of decompensation.

As Auman points out, there is no DDS reviewing opinion as to whether Auman met or equaled a Listing, as the reviewer found Auman's impairment to be non-severe.[1] The ALJ, however, found several severe impairments, including depression and general anxiety disorder, as detailed above. The ALJ's finding of severity required the ALJ to seek out an expert opinion as to equivalency. SSR 96-6p (an updated medical expert opinion must be obtained by the ALJ before a decision of disability based on medical equivalence can be made); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a

---

[1] The ALJ found that the opinions of the state agency medical consultants and state agency psychologist were reasonable based on the medical evidence and treatment obtained prior to the doctors rendering their opinions but that later obtained medical evidence supported findings of severe impairments.

medical judgment, and an ALJ must consider an expert's opinion on the issue.") Remand is thus required for the ALJ to obtain and consider this opinion regarding Listing 12.04.

### B. Credibility[2]

Auman further argues that the ALJ did not follow SSR 96-7p in making a credibility determination. In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify her finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [her] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). District courts "afford a credibility finding 'considerable deference,' and overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)).

>The ALJ gave partial weight to Auman's allegations:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. I find inconsistencies with the claimant's testimony, reports and the overall medical evidence that undermine the claimant's credibility. Therefore, I only give the claimant's allegations partial weight.

R. at 23. The ALJ then considered the appropriate factors and found as follows:

> I find her overall activities inconsistent with her alleged functional limitations and her allegations of worsening problems when sitting. It appears that the claimant engages in activities that she enjoys and many of them are sedentary tasks. She enjoys sitting on her porch, watching her soap operas, playing with her cat, and working on jigsaw puzzles. These activities are consistent with sedentary

---

[2] The Court has combined Auman's second and third arguments, as both regard the ALJ's credibility determination.

work and sitting. Notwithstanding, she does engage in other activities such as walking around her large farm or property, shopping and performing light household chores. She reported walking three times weekly. In November of 2012, she reported that she recently moved/lifting and moving, with cleaning the new home. Hence, it appears that the claimant was engaging in more activities then [sic] she alleged in her testimony. Although she alleged that she prefers to be alone, the claimant is able to be around others. She was able to work around others and do the job without many problems with others as indicated by her past manager. I do not find any significant problems with working with others and being around others. The claimant is able to go out in public. The overall evidence does not support that she is unable to work within the residual functional capacity.

  The claimant's work ended due to being let go. To the claimant's credit, she has a good work history, but the medical and other evidence of record fails to support her allegations regarding the frequency and severity of the symptoms. Overall, her complaints greatly exceed the clinical and diagnostic findings. She complained of an ability to sit for 10 minutes, but she was able to sit without any obvious discomfort at the hearing. She engages in many sedentary and other activities as indicated above including walking three times daily. Her diagnostic testing of the back showed mild or fairly mild findings. Her clinical findings on exam were unremarkable. She underwent conservative treatment of mostly medications. She had no injections and no ongoing physical therapy supported in the record. She testified to pursuing physical therapy in the past without any help. She went for a neurological exam as referred by her treating nurse practitioner with essentially all normal findings on exam.

  Additionally, her past work involved activities that exceed the assessed residential functional capacity. The claimant testified that her work involved lifting 20 and sometimes 50 pounds. She testified to a reduced lifting ability. The assessed residual functional capacity of sedentary work with lifting 10 pounds is more consistent with her subjective complaints and the medical evidence. I find that the claimant is able to perform other work. However, the claimant testified that she has not looked for other work. The claimant reported that she used to love working at her old job but then dreaded going in with increased stress at work. Once she went on medical leave and she was not going into her old work environment, she reported much improvement in her mental health symptoms. Hence, it appears that her past work environment escalated into a problem work environment, but after getting out of that situation, she had improvement. However, the claimant never looked for any other work in a different environment with other people. The record supports that she is able to perform other work.

  As for her mental health treatment, she had no specialized mental health treatment until June of 2012 other than medications. This lack of more treatment is suggestive that the medications were working with minimal symptoms. This is also supported by her consistent presentations in no acute distress with various physicians for physical concerns. The psychological consultative examiner indicated a GAF score of 50, indicating serious symptoms, however, I find this inconsistent with the overall medical evidence, her intact cognition and mental status exam findings. She alleged significant social anxiety, but she is able to shop

7

> in public in stores. Hence, she is able to be around others. She testified that she goes out to eat. Again, she is able to be out in public and around others. The claimant has been able to work around others in the past and her previous boss notably did not indicate any problems socially, contrary to the claimant's allegations. Additionally, the claimant only has to take Xanax rarely, which does not completely support her allegations of significant social anxiety. She has had improvement with her anxiety with medications.
>
> Overall, this medical record does not reflect the type of treatment or diagnostic assessments supportive of a finding of total disability.

R. at 23-24 (citations omitted). Given this thorough analysis that is consistent with the record overall, the Court finds that the ALJ's credibility determination is not patently wrong.

### C. ALJ's Consideration of Medical Sources

Auman argues that the ALJ gave insufficient weight to the opinions of treating physicians Dr. Mathews John, Dr. Jeff Huttinger, and Dr. Todd Carpenter. Auman saw Dr. John[3] for a psychiatric evaluation on May 3, 2013. The ALJ did not specifically indicate what weight she gave Dr. John's findings, instead discussing Dr. John's findings in the context of the weight she gave the mental health opinion of Nurse Practitioner Susan Hester:

> Dr. Mathews [sic] opined a present GAF of 50, serious symptoms, but a GAF at 65 in the past 12 months, mild symptoms. Accordingly, I do not find that the claimant's mental health symptoms have been supported on any ongoing basis to the extent supported in Ms. Hester's opinion or as alleged by the claimant.

R. at 26.

The ALJ indicated that she gave very little weight to the opinion of Dr. Huttinger, a psychologist whom Auman saw for individual counseling:

> I give very little weight to the opinion of claimant's treating counselor contained in a letter without specific treatment notes provided. Dr. Huttinger opined that the claimant should continue to require medical leave from work due to her inability to effectively function appropriately within a work related setting and due to [the] ongoing nature of her depressive and anxious symptoms. However, Dr. Huttinger did not provide any specific limitations regarding her symptoms. Additionally, he

---

[3] The ALJ's opinion refers to Dr. John Mathews (R. at 22), but Exhibit 16F cited by the opinion is that of Dr. Mathews John, M.D.

> broadly indicated ongoing depression and anxiety. I find that the other medical evidence of record does not support the severity and frequency needed to support this opinion. The claimant has not had any prior hospitalizations and her treatment has been conservative, reflecting that she does not need refills of Xanax regularly, rarely taking the medication and only needing it on an as needed basis. The record supports heightened anxiety from her previous work environment, but the claimant has not tried any other work environments or looked for any other jobs. The overall medical evidence does not support the severity of claimant's symptoms and it appears as if Dr. Huttinger rendered his opinion based on her subjective complaints alone.

R. at 25-26 (citations omitted).

Auman saw Dr. Carpenter on September 7, 2010. The ALJ failed to address Dr. Carpenter's findings other than a brief mention ("the claimant participated in marital counseling and treatment for mild depressive symptoms and mood swings with taking Zoloft"). R. at 21.

> With respect to a treating physician's opinion, the applicable regulations state:
>
> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed [below].

20 C.F.R. § 404.1527(d)(2). As interpreted by the Seventh Circuit, this "treating physician rule" instructs an ALJ "to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)). If the evidence supports a treating physician's medical opinion and contradictory evidence does not exist, the ALJ lacks a basis to reject it. *Bauer*, 532 F.3d at 608. But if conflicting evidence exists, the treating

9

physician's opinion does not receive controlling weight. *Id.* Rather, the treating physician's opinion is merely additional evidence for the ALJ to consider using a variety of factors, including the length of time and how often the treating physician examined the claimant. *Id.* Here, the ALJ failed to acknowledge the treating physician rule and determine whether the opinions of Drs. John, Huttinger, and Carpenter were entitled to controlling weight, and that failure was error that should be corrected on remand.

Auman also argues that the ALJ did not mention the findings of Dr. Howard Wooden, a consultative examiner. In fact, the ALJ did point to the finding of Dr. Wooden: "The psychological consultative examiner indicated a GAF score of 50, indicating serious symptoms, however, I find this inconsistent with the overall medical evidence, her intact cognition and mental status exam findings." R. at 24. Because he was not a treating physician, Dr. Wooden's findings were not entitled to controlling weight. The ALJ acknowledged his finding and explained why she found it to be inconsistent with other evidence, and the Court finds that she did sufficiently address Dr. Wooden's findings.

Auman further argues that the ALJ did not give sufficient reasons for dismissing the opinions of Susan Hester, a nurse practitioner who was Auman's primary health provider. The ALJ gave very little weight to the mental health opinion of Ms. Hester:

> I give very little weight to the mental health opinion of Susan Hester FNP, who is not an accepted medical source. On April 29, 2013, Ms. Hester opined that the claimant has marked limitations with interacting with supervisors, co-workers and responding to usual work situations. Ms. Hester also indicated that the claimant has marked limitations in understanding, remembering and carrying out complex instructions and ability to make judgments on complex work related decisions. I find this very inconsistent with the overall medical evidence and Ms. Hester's treatment record. I find it inconsistent with her intact cognition that was within the normal range at her psychiatric evaluation the following month. Again, this opinion seems to be based upon the claimant's subjective complaints only and I find it vastly inconsistent with the claimant's previous manager opinion. The claimant's manager, Ms. Walters, basically indicated that the claimant did her

10

> work capably and she was able to get along with others with only occasional incidents that resolved on their own. Additionally, on March 9, 2012, Ms. Hester opined that the claimant could return to work in June of 2012. I do not find that the good results with medications and counseling support her drastic change in opinion.

R. at 26 (citations omitted). The Court finds that the ALJ did sufficiently address her consideration of Ms. Hester's mental health opinion and explain the reasons she gave very little weight to Ms. Hester's opinion.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 12/28/15

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.